UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DEWAYNE HILL,

      Petitioner,

                                 Case No. 18-cv-13792

  v.

                                 Honorable George Caram Steeh

THOMAS WINN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY

Kenneth Dewayne Hill, ("Petitioner"), filed a habeas corpus petition, through attorney Jeffrey G. Collins. Petitioner challenges his state convictions for first-degree felony murder, Mich. Comp. Laws § 750.316; armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.529, 750.157, and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b.

Petitioner raises a claim challenging the admissibility of his confession to the Clinton Township Police. The State argues in an answer to the petition that the state courts reasonably rejected petitioner's claim. For the reasons stated below, the petition for a writ of habeas

- 1 -

corpus is DENIED.  The Court grants petitioner a certificate of
appealability.

## I.  BACKGROUND

Petitioner was convicted following a jury trial in the Macomb County
Circuit Court before the Honorable Mary A. Chrzanowski, in which he was
jointly tried with two of his co-defendants.  This Court recites verbatim the
relevant facts relied upon by the Michigan Court of Appeals, which are
presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).
*See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a fatal shooting that occurred during an
> armed robbery at a Clinton Township convenience store. The 51-
> year-old victim was the storeowner. All three defendants
> eventually confessed to their involvement in the robbery.
>
> Before the robbery, defendants gathered at Hill's apartment, then
> proceeded to the store in Hill's car. The store's surveillance
> footage showed three individuals—later identified as Grayson,
> Robinson, and Diaz–Gaskin—enter the store wearing dark
> clothing, gloves, and masks. The masked men placed "a block in
> the door to stop the door from locking behind them," presumably
> to defeat a push-button security device used by some stores that
> locks intruders inside when an alarm button is pressed. The first
> two men to enter the store were wielding firearms before they
> entered. The third masked man, Robinson, removed a red bag
> from under his shirt and appeared to be unarmed.
>
> The victim emerged from a rear office area, and Diaz–Gaskin
> jumped onto the countertop, began to "track[ ]" the victim with the
> muzzle of his handgun, and fired a single round, which struck the
> victim. The gunshot wound was necessarily fatal.

After he was shot, the victim fell to the ground, and Diaz–Gaskin subsequently aimed his semi-automatic handgun down at the victim's prone body. Due to a malfunction, however, Diaz–Gaskin's weapon could not be fired again immediately. Robinson removed money from the cash register, depositing it in the bag he carried, and the masked men fled. A passerby, who noticed the men fleeing the store, promptly called the police and reported the incident as a suspected robbery. A responding officer discovered the victim dead on the floor of the store.

According to Detective Dan Quinn of the Clinton Township Police Department, the police originally had little information about the masked men, and thus had no initial suspects. But the police ultimately received 74 "tips" regarding the robbery, several of which implicated defendants. After investigating and surveilling defendants, the police became convinced that Grayson and defendants were the perpetrators of the robbery, and all four suspects were arrested.

After obtaining *Miranda* waivers, Detective Quinn and Detective Brian Gilbert performed a custodial interrogation of each of the four suspects. Defendants all initially denied any involvement in the robbery, but each subsequently confessed to his role.

Robinson stated that he was unarmed during the robbery, and "didn't see the guns" carried by Grayson and Diaz–Gaskin. But Robinson acknowledged that he "knew" Grayson and Diaz–Gaskin were armed before the robbery occurred.

Diaz–Gaskin denied that he had intended to shoot the victim, claiming that his handgun had accidentally discharged. Diaz–Gaskin stated that he "thought he had the safety" of that weapon engaged and believed that his finger was not on the trigger, but when he "went to strike the victim" with the gun, it accidentally discharged. Contrastingly, based on the fact that Diaz–Gaskin "tracked" the victim with the muzzle of the semi-automatic handgun before firing, Detective Quinn opined that the shooting was not accidental but was, rather, a deliberate act. Diaz–Gaskin admitted that he was in possession of the semiautomatic handgun at Hill's apartment before the robbery and in Hill's car

on the drive to the robbery. Diaz–Gaskin also penned a confession letter, expressing his remorse.

Hill provided the police with both a written confession of his involvement as the driver and an oral confession.

*People v. Hill*, No. 329166, 2017 WL 535546, at \*1–2 (Mich. Ct. App. Feb. 9, 2017); *lv. den.* 501 Mich. 863, 900 N.W.2d 644 (2017)(internal footnotes omitted).

Petitioner seeks a writ of habeas corpus on the ground that the Michigan trial court erred in allowing an incriminating statement obtained in violation of his Fifth, Sixth and Fourteenth Amendment rights to be introduced into evidence at trial. [ECF No. 1, PageID.10.].

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

Petitioner claims that the trial court erred in failing to suppress the incriminating statement that he made to the Clinton Township Police because it was involuntary and taken in violation of his *Miranda* rights.

Petitioner appears to argue that his confession was inadmissible because the police did not honor his invocation of his right to counsel. As a related matter, petitioner argues that his confession was involuntary because the police misled petitioner into believing that his only choice was either to give his side of the story to the police without an attorney present or to invoke his right to counsel and not speak with the police, without explaining to petitioner that he could consult with counsel and still have the opportunity to give his version of events to the police with an attorney present. Petitioner also claims that his statement was involuntary because it was induced by promises of leniency by the police.

The Michigan Court of Appeals set forth the underlying factual basis of petitioner's claim:

> Before his custodial interrogation, Hill was advised of his *Miranda* rights, and he signed a written *Miranda* waiver. When asked whether he was "familiar" with his *Miranda* rights, Hill responded, "Yes, sir." During the ensuing interrogation, the following exchange occurred:
>
> [*Detective Gilbert*]: [Grayson]'s the only person you know.... I'm going to talk to everybody, [Hill]. I hope you understand this.

[*Hill*]: Can I get a lawyer because I am defending myself[?] I need to fight for myself. I'm not fighting for nobody else because (inaudible) you know.

I have two little girls and I have to look after, you know what I'm saying? This is too tough. It is tough, it is tough.

[*Detective Gilbert*]: Are you—

Okay. Yes, you have a right to a lawyer. Okay. Just like we went over in the very beginning, and just like we explained to you. We want to give you the opportunity to talk to us. Okay. You have a right to a lawyer. If you want a lawyer, that is fine. Then we're going to stop talking to you. Then you're not going to have an opportunity to talk to us any more. I want you to understand that because we're going to talk to everybody else. We may not come back and talk to you.

This is your opportunity right now. And I've been very straight forward and very honest with you. You do have that right, but once the door is shut, then we won't probably come back and talk to you and we will be talking to everybody else then—

[*Hill*]: I still have a lawyer to talk to, right[?]

[*Detective Quinn*]: That is not going to happen.

[*Detective Gilbert*]: That is not going to happen.

[*Hill*]: Say what, sir[?]

[*Detective Quinn*]: That is not going to happen.

[*Detective Gilbert*]: That is not going to happen because right now is when I want you to be truthful with me.

I know the truth, and you're beating around the bush.

And with you asking for a lawyer, I'm just telling you that we are going to talk to everybody. And this is your only opportunity to talk to us. Okay.

You are the least culpable in this. Okay. I know that.

Let me explain to you. I know you drove that night. I know which way you went back. I know you came off Joy Road and came down, and drove past the guard shack.

I have pictures of you going into the apartment buildings. I have your keys being used to go into the apartment building.

I have you in your car starting the car up, prior to this.

[*Detective Quinn*]: With these guys in (inaudible).

[*Detective Gilbert*]: With these guys in your car. With these guys coming out of your apartment leaving the apartment building. I have all that. I have witnesses. I have enhancement of pictures of these. That is not the best picture, that is the worst picture. Okay.

You have kids and I'm giving you the opportunity to talk to me now about it. Okay. I'm going to talk to everybody.

[*Hill*]: That is fine but.

[*Detective Gilbert*]: And guess what, somebody is going to talk about it.

[*Hill*]: Say what, sir[?]

[*Detective Quinn*]: Somebody is going to talk about it. Because one person pulled the trigger, not four. You understand that.

[*Hill*]: I understand you, sir.

[*Detective Gilbert*]: Okay. Now, I guess—

[*Detective Quinn*]: We need to know, [Hill], before we go any further. You know, you have the right to have an attorney. I just want to make it clear. Okay. You understand what [Detective Gilbert] said. You have a right to an attorney.

So before we continue talking we need to know. Do you want an attorney or do you want to tell us your side of the story[?]

[*Hill*]: I want an attorney.

[*Detective Gilbert*]: You want an attorney. Okay. That is it, man. Good luck to you.

Roughly 20 minutes later, however, Hill contacted the detectives and indicated that he wished to give a statement:

[*Detective Quinn*]: All right. We just left here, right, because you said you wanted an attorney, right?

Come on in.

Right? Is that correct? You said you wanted an attorney and I stopped talking and I haven't asked you any questions. Right[?] Is that correct[?]

Okay. We took you back to booking, right, to the booking, the cells and stuff like that.

[*Hill*]: Yes, sir.

[*Detective Quinn*]: When we were back there you said you wanted to continue talking. Is that right[?]

[*Hill*]: Yes, sir.

[*Detective Quinn*]: I need to know for sure now. I haven't, I haven't asked you any questions. I haven't prompted you to continue talking. Nothing like that. Right?

You told me you wanted to continue talking, right? Is that fair[?]

[*Hill*]: Yes, sir.

[*Detective Quinn*]: Okay. I haven't promised you anything, right? You thought about it and you said you wanted to keep talking, but I haven't asked you anything since we left and you said you wanted an attorney, correct?

[*Hill*]: Yes.

[*Detective Quinn*]: Okay. Do you want to keep talking to us[?]

[*Hill*]: Yes, sir.

Thereafter, Hill confessed his involvement as the driver during the robbery both orally and in a written statement.

Before trial, Hill filed a motion in limine seeking to suppress his custodial statements, arguing, in pertinent part, that the police engaged in coercive interrogation tactics that rendered such statements involuntary. After considering the matter, the trial court denied Hill's motion to suppress his custodial statements, reasoning (1) that Hill's statement about a lawyer—i.e., "Can I get a lawyer because I am defending myself[?]"—was, "given the context of the conversation," a statement that a reasonable officer would have perceived as a question whether Hill was still entitled to counsel, not an unequivocal invocation of the right to counsel, (2) that because Hill had no "absolute right to tell the police his side of the story," the detectives did not act improperly by forcing Hill to choose between either exercising his right to counsel or giving the police a statement, and (3) that based on the totality of the circumstances (including Hill's educational level, physical condition, prior criminal history, and the length of his detention and interrogation), neither Hill's custodial statements nor his *Miranda* waiver were involuntary.

*People v. Hill*, 2017 WL 535546, at *3–4.

After discussing the applicable caselaw, the Michigan Court of Appeals rejected petitioner's claim that his confession was involuntary or taken in violation of his Fifth Amendment rights as follows:

Here, after considering the totality of the circumstances, we conclude that the trial court did not err by refusing to suppress Hill's confessions. As depicted in the video recording of his interrogation, Hill suffers from hearing loss that requires him to wear hearing aids, but he was able to readily communicate with the detectives during his interrogation. There had been no unnecessary delay in his arraignment, and Hill was detained and interrogated only a short while before providing his confession—indeed, he had just been "booked." There is no evidence that Hill was injured, intoxicated, drugged, in ill health, or in need of food, sleep, or medical attention, and the recording of his interrogation demonstrates no physical abuse or threats of such abuse by the police. It is true that the detectives made several comments suggesting that it might be in Hill's best interest to confess before his coconspirators did so. However, Detective Quinn also expressly informed Hill that the detectives were not offering any "deals" or "promises." Further, although the detectives made several statements indicating that Hill would not be permitted to speak with them after speaking with an attorney, the detectives also advised him of his *Miranda* rights at the outset of the interrogation—at which time Hill acknowledged that he was familiar with those rights—and during the ensuing interrogation the detectives repeatedly echoed that Hill had the right to speak with an attorney. On this record, there is no indication that Hill's age, intelligence, education level, or lack of prior experience with the police prevented him from exercising his free will about whether to provide a statement to the police. On the contrary, the fact that Hill initially invoked his right to counsel and ended the interrogation—despite the detectives' clear desire that he not to do so—strongly suggests that Hill was exercising his own free will and was aware of his rights.

For those reasons, we are convinced that the prosecution proved the voluntariness of Hill's confessions by at least a preponderance of the evidence. Consequently, the trial court did not err by denying Hill's motion to suppress those confessions.

*People v. Hill*, 2017 WL 535546, at *5–6.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994)(citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state

of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. at 167.

Petitioner argues that the statement should have been suppressed because petitioner invoked his right to counsel.

It is true that once an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988)(quoting *Miranda*, 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 559 U.S. 98, 104-05 (2010)(quoting *Roberson*, 486 U.S. at 681). Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." *Roberson,* 486 U.S. at 686.

Petitioner failed to establish that his statements were obtained in violation of *Miranda* or *Edwards*. Petitioner's initial statements to the police regarding an attorney may have been too equivocal to invoke the right to counsel.

This Court notes that the "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). The suspect's statement "must unambiguously request counsel." *Id*. at 459. Additionally, "[u]nless the suspect actually requests an attorney, questioning may continue." *Id.* at 462.

The trial court judge did not unreasonably apply clearly established federal law by finding that the petitioner did not actually invoke his right to counsel, at least with respect to his first two statements to the police, because fairminded jurists could conclude that petitioner's statements of "Can I get a lawyer because I am defending myself[?]" and "I still have a lawyer to talk to, right[?]" were not unambiguous requests to speak with counsel. In *Davis,* the Supreme Court concluded that the defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal request for counsel. *Davis,* 512 U.S. at 462.

Other cases have found similar language to be too equivocal to amount to an unambiguous request to speak to counsel, so as to require the police to cease their interrogation. *See United States v. Potter,* 927 F.3d 446, 451 (6th Cir. 2019)(suspect's alleged mention of attorney during police interrogation and question as to whether he needed one did not constitute unambiguous request for counsel requiring officers to immediately cease questioning).*Cornelison v. Motley,* 395 F. App'x 268, 274 (6th Cir. 2010)(habeas petitioner's comment "What if I want my lawyer present first?" too ambiguous to require the police to terminate their interrogation); *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994)(defendant's statement during police interrogation, that "it would be nice" to have an attorney, was too ambiguously worded to require police to stop questioning defendant); *U.S. v. Mullikin*, 534 F. Supp. 2d 734 (E.D. Ky. 2006)(defendant's equivocal and ambiguous statement to arresting officer that "I think I might need a lawyer" did not invoke right to counsel); *but cf. Abela v. Martin,* 380 F.3d 915, 926 (6th Cir.2004) (statement "maybe I should talk to an attorney by the name of William Evans" was an unequivocal request for counsel where the suspect specifically named his attorney and gave the police officer the attorney's business card).

Petitioner's final reference to an attorney appears to be more unequivocal.  At that point, the detectives honored his request to speak with counsel and ceased the interrogation.  The detectives only began questioning petitioner again after he indicated a desire to reinitiate discussions with the police.

In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. *Id*. at 1041–42.  The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id*. at 1045–46.  By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id*. at 1055.  The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F.3d 297,

305 (6th Cir.2008)(quoting *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994)).

Here, petitioner asked if he could speak with the detectives again. There is no allegation or evidence to rebut the fact that petitioner reinitiated contact with the police.   Because petitioner freely initiated the second conversation with the detectives, without any improper influence or pressure from the officers, the admission of his statement to the Clinton Township Police did not violate *Edwards. Davie,* 547 F.3d at 305*; see also Fautenberry v. Mitchell*, 515 F.3d 614, 630 (6th Cir. 2008).

Petitioner further argues that his confession was involuntary because the police gave him the false dichotomy of either invoking his right to counsel and remaining silent or giving the police his side of the story without counsel present.   Petitioner argues that this advice was misleading and rendered the statement involuntary because petitioner could have obtained counsel and have him or her present with petitioner when he gave his version of the events to the police.

In *Duckworth v. Eagan*, 492 U.S. 195 (1989), the Supreme Court held that when a suspect was advised by the police that he would be provided an attorney "if and when [he] went to court," his subsequent waiver under *Miranda* was voluntary. *Id.* at 203-04.  The Supreme Court rejected the

argument that the warning may have suggested to the suspect that he could not have counsel present until he went to court, concluding that the argument misapprehended the effect of this phrase on the suspect. *Id.* The Supreme Court observed that "the initial warnings given to respondent touched all of the bases required by *Miranda*." *Id.* at 203. The Supreme Court further emphasized that "*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Id.* at 204. The Supreme Court concluded "[i]f the police cannot provide appointed counsel, *Miranda* requires only that police not question a suspect unless he waives his right to counsel." *Id.*

In *Jackson v. Frank*, 348 F.3d 658, 661, 663-65 (7th Cir. 2003), the Seventh Circuit held that the state court's determination that a police officer's statement that he could not accommodate the habeas petitioner's immediate request for an attorney and that he would have to end the interview did not render petitioner's subsequent *Miranda* waiver involuntary, was not an unreasonable application of clearly established federal law, so as to provide a basis for grant of federal habeas corpus relief.

More recently, the Sixth Circuit, in *Mitchell v. MacLaren,* 933 F.3d 526 (6th Cir. 2019), relied on the holdings in *Duckworth* and *Jackson* to reject a habeas petitioner's claim that his waiver of his *Miranda* rights was involuntary because the detective told the petitioner that an attorney could be appointed for him down the line. The Sixth Circuit held that assuming that the detective did not accurately describe the availability of an attorney by telling the petitioner that an attorney would be appointed for him "down the line" if he could not afford one, in response to the petitioner's question, while reviewing the written advisement of *Miranda* rights, the state court's determination that the detective did not violate *Miranda* was not an unreasonable application of clearly established Supreme Court precedent, as would provide basis for federal habeas relief, where the written advisement conveyed to the petitioner that he had a right to counsel before and during questioning, and that he had a right to stop answering questions. *Id.* at 533-35.

Petitioner has failed to show that his confession was involuntary simply because the detectives refused to give him the option of having counsel available during the interrogation. "Neither *Miranda* nor any other provision of federal law requires a public defender to be immediately available to a suspect during interrogation." *Mitchell v. MacLaren*, 933 F.3d

at 534 (quoting *Jackson,* 348 F.3d at 663)).  If the police cannot provide

counsel for a suspect, *Miranda* merely requires that all questioning of a

suspect cease until he waives his right to counsel. *Duckworth,* 492 U.S. at

204.  The detectives, in fact, ceased questioning petitioner when he

invoked his right to counsel.  It was petitioner's choice to reinitiate the

conversation with the police.  Petitioner failed to show that the rejection of

this subclaim by the Michigan courts was unreasonable.

Petitioner next contends that his confession was involuntary because

it was the product of promises of leniency when told that it would be easier

for petitioner if he cooperated.

A confession, in order to be deemed voluntary, cannot be the result of

any direct or implied promises, however slight. *See Shotwell Mfg. Co. v.*

*U.S.,* 371 U.S. 341, 347 (1963).  Police promises of leniency and threats of

prosecution can be objectively coercive, as required for a finding that a

confession was involuntary due to police coercion. *United States v.*

*Johnson*, 351 F.3d 254, 261 (6th Cir. 2003).  However, courts have applied

a totality of circumstances test in determining whether a police officer's

promises of leniency made the defendant's confession involuntary. *See*

*Holland v. Rivard*, 800 F.3d 224, 241-42 (6th Cir. 2015); *Loza v. Mitchell*,

766 F.3d 466, 478-80 (6th Cir. 2014); *Simpson v. Jackson*, 615 F.3d 421,

433–34 (6th Cir. 2010), *judgment vacated sub nom. Sheets v. Simpson on other grds*, 565 U.S. 1232 (2012).

The detectives' suggestion that cooperation would be in petitioner's best interest did not render his confession involuntary, in light of the fact that the detectives also expressly advised petitioner that they could not promise him anything. *See United States v. Stokes*, 631 F.3d 802, 808 (6th Cir. 2011)(Defendant's confession to bank robbery was voluntary, not coerced, despite police officer's promise to inform prosecutor of defendant's cooperation; officer advised defendant that officer could not promise anything about the prosecutor's actions, thereby explaining the limited nature of the promise).

Based upon the totality of the circumstances, it was objectively reasonable for the Michigan Court of Appeals to hold that petitioner's statement to the police was voluntary. *See McCalvin v. Yukins,* 444 F.3d 713, 720 (6th Cir. 2006).  Petitioner was advised of his *Miranda* rights. There was no unnecessary delay in his arraignment.  Petitioner was detained and interrogated for only a short period of time before providing his confession.  There is no evidence that petitioner was injured, intoxicated, drugged, in ill health, or in need of food, sleep, or medical attention.  The record from the interrogation showed no physical abuse or

threats of violence by the police.  Although the detectives suggested that it might be in petitioner's best interest to confess before his coconspirators did, Detective Quinn also expressly informed petitioner that the detectives were not offering any "deals" or "promises."  Further, the detectives repeatedly informed petitioner that he had the right to speak with an attorney.  Under the deference required by the AEDPA, and given the factors supporting a finding that petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding petitioner's confession to have been voluntary was a reasonable application of federal law. *McCalvin,* 444 F.3d at 720.  Petitioner is not entitled to relief on his claim.

## IV.  CONCLUSION

The Court will deny the petition for a writ of habeas corpus.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Although this Court believes that its resolution of petitioner's claim was correct, reasonable jurists could debate the Court's assessment of petitioner's claim regarding the admissibility of his custodial statement. Accordingly, a certificate of appealability will be granted. *Mitchell v. Maclaren*, No. 15-CV-10356, 2017 WL 4819104, at *19 (E.D. Mich. Oct. 25, 2017), *aff'd*, 933 F.3d 526 (6th Cir. 2019).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

IT IS FURTHER ORDERED That a Certificate of Appealability is **GRANTED**.

Dated: May 10, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 10, 2021, by electronic and/or ordinary mail.

s/Leanne Hosking
Deputy Clerk